IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

AMANDA DOROTHY JONES                                                      PLAINTIFF

VS.                                                           CIVIL ACTION NO. 1:16-cv-254-FKB

NANCY A. BERRYHILL, ACTING COMMISSIONER                                  DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Amanda Dorothy Jones of the Commissioner of Social Security's final decision denying Jones's application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [13] regarding Jones's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Motion [16] and Memorandum [17], and Defendant's Response [18] and Memorandum [19]. The parties have consented to proceed before the undersigned United States Magistrate Judge [14], and the District Judge has entered an Order of Reference [15]. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the Commissioner's decision should be affirmed.

I. PROCEDURAL HISTORY

Jones filed her application for a period of disability, DIB, and SSI on February 26, 2014, and alleged a disability onset date of November 1, 2007, when she was twenty years of age. [13]

at 90, 168.[1]  In her application, she alleged that she was disabled due to a learning disability; knee, shoulder, and ankle problems, including chronic pain in those joints; depression; granuloma annulare; a learning disability; premenstrual dysphoric disorder; depth perception; short term memory loss; and "tail bone not straight." *Id.* at 99, 174.  At the time of her application, she was five feet, three inches tall, and weighed one hundred pounds.  *Id.*

Jones was born on December 29, 1986.  *Id.* at 99.  Thus, she was considered a "younger individual" at the time of her onset date of November 1, 2007, and on the date the ALJ issued his decision, February 29, 2016.  *Id.* at 24.  She first became insured on April 1, 2008, and was last insured on March 31, 2010.  *Id.* at 90.  Jones attended special education classes through the twelfth grade, and she received a certificate of completion when she finished high school in 2006.  *Id.* at 38, 175.  She completed a class on floral design at a local college.  *Id.* at 38-39.

Jones has a brief work history.  She worked as a drug store stock clerk from March to May 2006.  *Id.* at 98.  Thereafter, she worked for two months at a grocery store as a clerk in the in the produce department, where she cut and displayed fruit.  *Id.* at 44-45, 167.  From June 2006 to May 2009, she worked as a cleaner for an industrial cleaning company, at which her mother was her direct supervisor.  *Id.* at 45-47.  During the hearing before the ALJ, her mother testified that Jones would work only one to two days out of a week during her employment at the cleaning company.  *Id.* at 81.  At the hearing, both the claimant and her mother testified that Jones does not have a driver's license.  *Id.* at 51-52, 85.

The Social Security Administration denied Jones's application initially and upon reconsideration.  Jones requested a hearing, which was held on February 12, 2016, in

---

[1] Citations reflect the original pagination of the administrative record.

Hattiesburg, Mississippi. *Id.* at 29. At the hearing, she was represented by counsel, and a vocational expert testified. *Id.* On February 29, 2016, the ALJ issued a decision finding that Jones was not disabled. *Id.* at 14-24. The Appeals Council denied her request for review on May 11, 2016, *id.* at 1, and this appeal followed.

## II. MEDICAL HISTORY

Although the briefs have summarized Jones's medical history, a review of Plaintiff's medical conditions will aid in the consideration of this case. The records show that Jones had a history of endometriosis and abdominal pain, for which she underwent a complete hysterectomy in October 2015. [13] at 426, 437. At the hearing in February 2016, she testified that the surgery had helped her abdominal pain. *Id.* at 57.

At the hearing, Jones testified that she was born with birth defects that were the source of pain in her right knee, right ankle, and right shoulder. *Id.* at 48-50. She explained that both of her knees pointed to the right, and that her right shoulder was too big for her body. *Id.* at 49. Although a shoulder sprain was first identified on April 10, 2007, Jones did not complain of joint pain at a routine visit two days later with her treating nurse practitioner, Jodi T. Powell, APRN-NPC. *Id.* at 486-487. At subsequent, routine appointments in April 2011 and March 2014, Jones reported "no arthralgias," but complained of shoulder joint pain in March 2014. *Id.* at 470-471, 478. At a September 2014 routine check up with Powell, Jones complained of generalized joint pain, and Powell commented that Jones had "scoliosis to the right." *Id.* at 464-465. However, in January 2016, Powell treated Jones for a rib contusion resulting from "rough housing" with friends. *Id.* at 458. At the same appointment, Jones denied joint stiffness. *Id.* at 459.

Powell also initially diagnosed with Jones with seasonal pattern depression in March

2014, which coincided with the dissolution of her marriage. *Id.* at 470-472. At that time, Powell prescribed Lexapro, which she renewed for Jones at a subsequent check up in September 2014. *Id.* at 464. At that check up, Jones reported that she thought the Lexapro was helping. *Id.* After a routine visit in March 2015, Powell commented that Jones was currently in therapy. *Id.* at 462.

In September 2014, Jones sought a psychological evaluation from the Pearl River County Hospital, where a nurse practitioner saw her. *Id.* at 418. The nurse practitioner diagnosed Jones with depression, and she noted that Jones's condition was currently responding to treatment. *Id.* at 419. From September 2014 until January 2015, Jones sought treatment on three occasions from the same nurse practitioner, who prescribed a sleep aid and medication for treatment of depression, and who commented that Jones's condition was responding to treatment. *Id.* at 421, 423, 425. It does not appear that she sought psychological counseling on a regular basis until February 2016, about the time of her hearing. *Id.* at 510.

Patsy H. Zakaras, Ph.D., conducted a consultative psychological evaluation of Jones in July 2014. *Id.* at 404. Dr. Zakaras described Jones as "polite and cooperative," with "good social skills." *Id.* at 405. The examiner also described that Jones was oriented in all spheres, and that her thought processes were logical and goal oriented. *Id.* Dr. Zakaras administered the Wechsler Adult Intelligence Scale IV, on which Jones had a verbal comprehension score of 78, a perceptual reasoning score of 79, a working memory score of 83, a processing speed score of 79, and a full scale IQ score of 75. *Id.* at 405. Dr. Zakaras also administered the Wide Range Achievement Test IV, which showed that Jones functioned on a third grade level in reading and spelling, and in the upper second grade level in math. *Id.* Dr. Zakaras diagnosed Jones with a learning disorder, not otherwise specified. *Id.* Dr. Zakaras concluded that Jones "seems capable

of performing simple routine repetitive tasks. She appears capable of following and understanding simple directions. She appears capable of relating to others and interacting with others." *Id.* at 406. Dr. Zakaras also concluded that Jones "appears capable of very basic money management but may need some assistance with managing her finances." *Id.*

Jones's treating nurse practitioner, Jodi Powell, and primary care provider, Michael Casey, M.D., signed a Medical Assessment of Ability to do Work-Related Activities, and a Physical Residual Functional Capacity Questionnaire on September 28, 2014.[2] *Id.* at 407-414. In the medical assessment, the form reflects that they diagnosed Jones with Axis I: depression, Axis II: learning disability, Axis III: diffuse joint pain, and Axis IV: divorce. *Id.* at 407. Regarding occupational adjustments, they concluded that she would have slight limitations in her ability to relate to co-workers and interact with a supervisor. *Id.* at 408. They found that she would have moderate limitations in her ability to follow work rules, deal with the public, use judgment, and maintain attention and concentration. *Id.* They also found that she would have extreme limitation in dealing with work stresses and functioning independently. *Id.* The form indicates that Jones would have an extreme limitation in understanding, remembering, and carrying out complex job instructions; moderate limitation in understanding, remembering, and carrying out detailed, but not complex job instructions; and slight limitation in understanding, remembering, and carrying out simple job instructions. *Id.* The form indicates that Jones would have a slight limitation in maintaining personal appearance and moderate limitation in behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. *Id.* at 409. The form indicates that Jones has delayed processing, and that she cannot

---

[2] Although Dr. Casey is identified as Jones's primary care provider, and he signed the questionnaires, the records do

manage benefits in her own best interest. *Id.*

The Physical Residual Functional Capacity Questionnaire indicates that Powell and Casey diagnosed Jones with depression and a learning disability, and that Jones's prognosis was fair. *Id.* at 410. The form described that she had moderate pain in her right shoulder, knee, and ankle, that she experienced daily and with activity since 2006. *Id.* They identified the clinical findings and objective signs as crepitus to the right knee, right shoulder range of movement, and slowed speech. *Id.* The form describes that Jones was being treated with daily Lexapro for depression, and another medication, which is illegible. *Id.*

The questionnaire stated that her impairments will last at least twelve months, that she is not a malingerer, that emotional factors contribute to her symptoms, and that the psychological conditions of depression and anxiety affect her physical condition. *Id.* at 411. The form described that her experience of pain and other symptoms were constantly severe enough to interfere with her attention and concentration. *Id.* The questionnaire stated that Jones is incapable of even a "low stress" job because she is learning disabled and unable to make hard decisions, and that she had pain in her right knee, shoulder, and ankle. *Id.* The questionnaire stated that Jones could walk less than two city blocks due to joint pain. *Id.*

The questionnaire indicated that Jones could only sit thirty minutes at one time and stand for fifteen minutes. *Id.* at 412. Powell indicated that Jones could sit and stand/walk for less than two hours in an eight-hour day. She also stated that Jones would need to walk around after fifteen minutes, for five minutes at a time. *Id.* Powell stated that Jones would not need a job that permitted shifting positions at will, but would need to take unscheduled breaks to rest for longer

---

not demonstrate that Dr. Casey examined Jones. *See id.* at 458-491. He is described as the "referring provider" in

than ten minutes before returning to work. *Id.*

Powell estimated that Jones could occasionally lift and carry less than ten pounds occasionally, but never left and carry more than ten pounds. *Id.* at 413. According to the form, Jones could occasionally twist, rarely stoop, and never crouch, climb ladders, or climb stairs. *Id.* Although no significant limitations were indicated for repetitive reaching, handling, or fingering, the nurse practitioner limited the use of hands/fingers/arms to a small percentage of an eight-hour workday. *Id.*

The form concluded that Jones's impairments were likely to produce "good days" and "bad days," and that she would miss more than four days per month from work as a result of the impairments or treatment. *Id.* at 414. The questionnaire also stated that Jones "is unable to provide care for herself 100%. She requires assistance to complete tasks." *Id.*

Plaintiff also has been diagnosed with a skin condition, granuloma annulare. According to the Mayo Clinic, it is a "skin condition that most commonly consists of raised, reddish or skin-colored bumps (lesions) that form ring patterns," usually on the hands and feet. *See* https://www.mayoclinic.org/diseases-conditions/granuloma-annulare/symptoms-causes/syc-20351319. In most cases, the skin condition is not painful and usually disappears within two years. *Id.* It is also treatable with a variety of medications, including corticosteroid creams, ointments, and injections, as well as oral medications. *Id.* Jones's treatment records do not indicate that she was prescribed medications for this condition.

### III. HEARING AND DECISION

---

Powell's bills. *Id.* at 488-491.

In his February 29, 2016, decision, the ALJ evaluated Jones's impairments using the familiar sequential evaluation process[3] and found that she has the severe impairments of depression and anxiety. [13] at 17. The ALJ concluded that Jones's right shoulder, knee, and ankle pain, as well as her learning disorder/possible borderline intellectual functioning were not severe. *Id.*

At the next step, the ALJ determined that Jones does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ found that Jones has the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: she must never climb ladders, ropes, but she may occasionally climb

---

[3] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558,

ramps and stairs; she may occasionally reach overhead with right arm and shoulder; and may perform only simple, routine tasks involving occasional interaction with supervisors, coworkers, and the general public. *Id.* at 19.

In making the determination of Jones's RFC, the ALJ concluded that Jones's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. *Id.* at 20. The ALJ gave great weight to the opinions of Dr. Zakaras, the consulting psychologist. *Id.* at 21. Citing Jodi Powell's lack of mental health licensure in the state of Mississippi and that she is not a medical doctor, the ALJ gave no significant weight to the opinion of Powell, Jones's treating nurse practitioner. *Id.* The ALJ also gave no significant weight to the opinion of "Michael Coy," whom the ALJ did not consider as a medical doctor. *Id.* The Court interprets "Michael Coy" as Michael Casey, M.D., who is listed as Jones's primary care provider. *Id.* Even so, the ALJ discounted the opinions of Powell and Casey because they were not consistent with the evidence of record. *Id.* at 22. The ALJ gave great weight to the opinions of non-examining, state agency doctors, and some weight to the function report completed by Jones's mother. *Id.*

At step four, the ALJ found that Jones is capable of performing her past relevant work as a stocker. *Id.* at 22. At the final step, relying upon the testimony of the Vocational Expert ("VE"), and considering the extent to which Jones's limitations erode the unskilled light occupational base, the ALJ concluded that Jones can perform the jobs of small parts assembler, bench assembler, and electric worker, all of which are sedentary in exertional demand and

---

564 (5th Cir. 1995).

unskilled, with a specific vocational preparation level of 2. *Id.* at 23. Therefore, the ALJ determined that Jones was not disabled from November 1, 2007, through the date of the decision, February 29, 2016. *Id.* at 24.

## IV. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

## V. DISCUSSION OF THE ALLEGED ERRORS

AND APPLICABLE LAW

Plaintiff argues that the ALJ's decision should be reversed and/or remanded based on the following reasons:

1. The ALJ and/or the Appeals Council committed an error of law in assessing the existence, severity and/or effect of Amanda's shoulder, knee, ankle, learning disability/intellectual disorder, Granular Allaloma, and endometriosis impairments at step two;

2. That substantial evidence exists to establish the existence, severity and/or effect of Amanda's shoulder, knee, ankle, learning disability/intellectual disorder, Granular Allaloma, and endometriosis impairments at step two;

3. The ALJ committed an error of law in finding that Amanda had past relevant work as a stocker pursuant to 20 C.F.R. § 404.1565;

4. Substantial evidence exists that Amanda's prior job as a stocker was not past relevant work pursuant to 20 C.F.R. § 404.1565;

5. The ALJ and Appeals Council committed an error of law by failing to consider the extent of any limitations caused by all of Amanda's physical and mental impairments in determining Amanda's residual functional capacity to engage in work setting; and

6. The Failure by the ALJ and the Appeals Council to follow the applicable legal standards regarding considering all of Amanda's impairments; and, in failing to consider substantial evidence in the consideration constitutes prejudice for which reversal is warranted.

[17] at 1-2.

A. Did the ALJ and Appeals Council properly consider Jones's alleged impairments?

Jones argues that the ALJ and the Appeals Council committed an error of law when assessing the severity of her alleged impairments, and that substantial evidence establishes that her shoulder, knee, ankle, learning disability/intellectual disorder, granuloma annulare, and endometriosis impairments are severe. Furthermore, Jones argues that the ALJ erred by ignoring her nurse practitioner's and treating doctor's assessments of her impairments.

˜11˜

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain. 20 C.F.R. §§ 404.1529(a), 416.929(a)(1997); *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Id.*

A review of the records demonstrates that substantial evidence supports the ALJ's determination that these conditions were not severe. Although she had a distant history of a shoulder sprain in 2007, and a recent history of complaints of pain in her shoulders and joints in 2014, interim records substantiate that she made no complaints of joint pain. Furthermore, there are no radiological or other tests substantiating her claims of pain related to her joints. At the hearing in February 2016, she testified that her hysterectomy had helped her abdominal pain. Although she argues that the ALJ failed to consider her skin condition of granuloma annulare, no medical professional has identified physical restrictions related to it or prescribed medications to treat it. Furthermore, in March 2014, her skin was negative for rash or bruising. [13] at 256.

With regard to her learning disorder/possible borderline intellectual functioning, the consulting psychologist found that she was capable of following and understanding simple directions. *Id.* at 406. Her school records support this conclusion, finding in 2001 that her strengths were that she was an "extremely hard worker," she completed "all assignments in a timely manner," and she was "very dependable and friendly." *Id.* at 266. Although she functioned between the second and fourth grade levels at that time, she worked at the school concession stand and achieved 100 % of her academic and vocational goals. *Id.* Furthermore, her activities of daily living, such as personal grooming and hygiene, riding a bike, caring for

pets, performing household chores, sewing, and shopping, support the ALJ's conclusion that she can perform at least simple tasks. *See* [13] at 192-193; *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995)("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.").

Because the ALJ's opinion shows that the ALJ considered Jones's complaints of pain along with her activities and the medical evidence, the undersigned finds that the record contains substantial evidence to support the ALJ's decision and must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Accordingly, substantial evidence supports the ALJ's conclusion.

The ALJ also did not err by giving "no significant weight" to the opinion of her treating nurse practitioner, Jodi Powell or to Michael Casey, a doctor who is listed in the medical records as Jones's primary care provider. An ALJ must show good cause for giving little or no weight to the opinion of a treating source. *Newton v. Apfel,* 209 F.3d 448, 455–56 (5th Cir. 2000). Good cause may be shown where the opinion is conclusory, unsupported by the medical evidence, or otherwise bereft of substantial support. *Id.* at 456. Furthermore, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Under the regulations, a nurse practitioner is not considered an acceptable medical source. *See* 20 C.F.R. § 416.913(a). Although a nurse practitioner falls under the category of "other sources" in § 416.913(d), the ALJ is not obligated to consider evidence offered by those sources. Furthermore, despite the ALJ's misidentification of Casey as "Michael Coy," this error does not provide a basis for reversal. Although Michael Casey signed the medical assessment

˘13˘

and the physical residual functional capacity questionnaire, there is no evidence in the record that the doctor ever examined Jones.

More importantly to the Court, and true to the directive of *Newton*, substantial evidence supports the ALJ's conclusion that Powell's opinions were not consistent with the evidence. In his opinion, the ALJ discussed the ways the psychological and physical evidence in Powell's treatment record did not support her opinions. [13] at 22. The Court's review of the record demonstrates that Powell's picture of Jones, as presented by the medical assessment and the questionnaire, is at odds with her own records and other evidence in the record. For instance, in January 2016, Powell evaluated Jones for complaints of rib pain "after rough housing with friends." [13] at 458. In May 2014, the claimant's mother stated that Jones goes biking and walking, including that she could walk a mile before needing to stop and rest. *Id.* at 192. At the hearing, Plaintiff testified that she regularly accompanied her mother while shopping and on errands. *Id.* at 66. However, in her September 2014 questionnaire, Powell stated that Jones could walk less than two blocks due to joint pain. *Id.* at 411. Accordingly, because the ALJ showed good cause for giving "no significant weight" to Powell's opinions, the ALJ did not err, and substantial evidence supports the ALJ's decision.

### B. Did the ALJ commit an error of law and does substantial evidence support the ALJ's finding regarding Jones's past relevant work?

Plaintiff argues that the ALJ erred by finding that her past light, semi-skilled work as a stocker qualified as "past relevant work" pursuant to 20 C.F.R. § 404.1565 because her past work did not equate to "substantial gainful activity." *See* 20 C.F.R. § 404.1565(a). More specifically, Jones argues that this work should be characterized as an unsuccessful work attempt

because her wages were insufficient and the job only lasted three months, from March to May, 2006.

Assuming, without deciding, that the ALJ erred when he characterized Jones's past work as a stocker as substantial gainful activity, this error was harmless. *See Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988). With the assistance of vocational expert testimony, the ALJ identified three sedentary, unskilled jobs that Plaintiff, with her limitations as recognized by the RFC, could perform. *See Hoelck v. Astrue*, 261 Fed. App'x 683, 687 (5th Cir. 2008). Furthermore, Jones has not satisfied her burden of rebutting the ALJ's finding that she could perform the alternative sedentary jobs of small parts assembler, bench assembler, and electrical worker. *See Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)(finding that if the Commissioner determines that a claimant is capable of performing other gainful employment, the claimant must prove that the claimant cannot in fact perform the alternate work).

<u>C. Did the ALJ and the Appeals Council commit an error of law in determining her residual functional capacity?</u>

Jones argues that the ALJ and the Appeals Council failed to consider the disabling effect of each of her ailments and the combined effect of all of her impairments when deciding her residual functional capacity.

By statute, an ALJ is required to discuss the evidence offered in support of a claimant's claim for disability and explain why the claimant is found not to be disabled. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Nevertheless, the "ALJ is not always required to do an exhaustive point-by-point discussion." *Id.*

The undersigned has reviewed the medical evidence of record and examined the ALJ's opinion. A review of the ALJ's decision shows that the ALJ fully discussed the evidence of record and considered Jones's record-supported impairments in reaching his decision. The ALJ states that he considered all of her symptoms, her medically determinable impairments, and the entire case record, and his decision bears this out. *Id.* at 19-20. The ALJ discussed Jones's medical evidence as well as her hearing testimony, pointed out where medical evidence existed to support her contentions, as well as the lack of medical evidence supporting her contentions. [13] at 19-22. The undersigned finds that this argument does not provide a basis for remand or reversal.

## VI. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Plaintiff's Motion to Remand [16] is hereby denied. Accordingly, the Commissioner's decision is hereby upheld, and this case is dismissed with prejudice. A separate judgment will be entered. Fed. R. Civ. P. 58.

SO ORDERED, this the 12th day of March, 2018.

                                               /s/ F. Keith Ball
                                       UNITED STATES MAGISTRATE JUDGE